O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-03854 AHM (SHx) | | Date | April 5, 2011 |
|---|---|---|---|---|
| Title | OSKAR SYSTEMS, LLC v. CLUB SPEED, INC. et al. | | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys **NOT** Present for Plaintiffs: | Attorneys **NOT** Present for Defendants: | |

**Proceedings:** IN CHAMBERS (No Proceedings Held)

This action arises out of a dispute over computer software used by the parties to operate various go kart racing facilities. Plaintiff Oskar Systems, LLC ("Oskar") sued Defendants Club Speed, Inc. ("Club Speed"), Eric Novakovich ("Novakovich"), Pole Position Raceway, Inc. ("Pole Position"), P2R Karting, Inc., Ken Faught ("Faught"), and Jason Williams ("Williams") for copyright infringement under 17 U.S.C. § 501 for the reproduction, marketing, and distribution of "Speed Sheet" software program, which allegedly contained computer code illegally copied from Plaintiff's software program. The Club Speed Defendants (Club Speed and Novakovich) develop and distribute computer software to business users, while the Pole Position Defendants (Pole Position, P2R Karting, Faught, and Williams) operate indoor go kart facilities throughout the U.S. that use the Speed Sheet software.[1]

On June 4, 2010, the Club Speed Defendants, the Pole Position Defendants, and Oskar participated in a nine-hour settlement conference before Magistrate Judge Hillman, after which he entered minutes stating that the case "partially settle[d]." Dkt. 82. The Parties do not dispute that in principle a settlement was reached at this conference, but dispute whether a Settlement Agreement was ever entered into. The Club Speed Defendants assert that the parties never entered into a completed settlement agreement.

---

[1] The Pole Position Defendants are no longer a party to this action. On August 26, 2010, the Court granted the Pole Position Defendants' Motion for Summary Judgment, Dkt. 158, and on September 2, 2010, the Court entered judgment in favor of the Pole Position Defendants. Dkt. 161. The Court granted the Pole Position Defendants attorneys fees on October 20, 2010. Dkt. 179.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-03854 AHM (SHx) | Date | April 5, 2011 |
|---|---|---|---|
| Title | OSKAR SYSTEMS, LLC v. CLUB SPEED, INC. et al. | | |

Oskar filed this Motion to Enforce the Settlement Agreement,[2] which is now before this Court. This Motion was taken under submission on March 1, 2011. Dkt. 204. For the reasons discussed below, the Court DENIES Plaintiff's Motion.

## I.    LEGAL STANDARD

It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it. *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) (citations omitted). But summary enforcement is inappropriate when there is conflicting evidence as to whether there was a meeting of the minds regarding the material terms of the purported settlement agreement. *Id.* at 891.

Local law governs the construction and enforcement of settlement agreements. *See United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992) (citation omitted). Oral agreements are enforceable under California law, and "[w]hen parties orally agree upon all the terms and conditions of an agreement with the mutual intention that it shall thereupon become binding, the mere fact that a formal written agreement to the same effect is to be prepared and signed does not alter the binding validity of the oral agreement." *Richardson v. Richardson*, 180 Cal. App. 3d 91, 97 (Ct. App. 1986) (quoting *Pacific Grove-Asilomar Operating Corp. v. County of Monterey*, 43 Cal. App. 3d 675 (Ct. App. 1974). *See also Kohn v. Jaymary-Ruby, Inc.*, 23 Cal. App. 4th 1530 (Ct. App. 1994) (finding substantial evidence of settlement where minutes of settlement conference stated that settlement was reached; letter sent day after settlement conference confirmed terms of settlement and appellant did not object that the terms were inaccurate; and judge who presided over settlement conference confirmed that a settlement was reached). However, "failure to reach a meeting of the minds on all material points prevents the formation of a contract even though the parties have orally agreed upon some of the terms, or have taken some action related to the contract," *Banner Entm't, Inc. v. Superior Court*, 62 Cal. App. 4th 348, 359 (Ct. App. 1998) (citations omitted), and an "agreement to agree" is unenforceable under California law. *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 213-14 (Ct. App. 2006). "[T]here is no contract where the objective manifestations of intent demonstrate that the parties chose not to bind themselves until a subsequent agreement [was] made." *Id.* at 213 (quoting

---

[2]Dkt. 197.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-03854 AHM (SHx) | Date | April 5, 2011 |
|---|---|---|---|
| Title | OSKAR SYSTEMS, LLC v. CLUB SPEED, INC. et al. | | |

*Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309, 316 (9th Cir.1996)).

## II. DISCUSSION

Where settlement is reached at a court settlement conference, as it was here, the judge will often cause the agreement to be "put on the record," wherein the terms will be stated in open court and taken down by a court reporter, or entered in the minutes, or both. *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1138 (9th Cir. 2002). The Court here does not have a record of the settlement proceedings, only the minutes of the conference noting that the case "partially settled." Dkt. 82. The Parties did not suggest or request that a finalized agreement be put on the record. Baker Decl. (counsel for Club Speed Defendants), ¶ 7. What is in dispute is whether the parties agreed to settle their dispute on the terms set forth by Oskar.

The parties agree that on June 4, 2010, they met for settlement negotiations in front of Magistrate Judge Hillman. Oskar relies on the declarations of Mike Conte and Alejandro S. Angulo to assert that the parties entered into a settlement agreement, the terms of which were proposed by the Club Speed Defendants via email, and were accepted by Oskar, also via email. Conte Decl., ¶ 2 & Exh. 2; Angulo Decl., ¶ 3. These email exchanges occurred directly between the presidents of the two companies, unbeknownst to Judge Hillman. Baker Decl., ¶ 4. The president of Club Speed, Eric Novakovich, was not present at the settlement conference but participated telephonically. Baker Decl., ¶ 3. These emails between Mike Conte, president of Oskar Systems, and Novakovich were not made on the record during the settlement proceedings.

### A. Oskar Declarations

According to Oskar, the essential terms of the settlement agreement were as follows:

> 1. Club Speed shall receive the following:
>    a. A license to use Oskar's intellectual property;
>    b. Oskar's business to be merged into Club Speed's business and Oskar's company data to be shared with Club Speed;

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-03854 AHM (SHx) | Date | April 5, 2011 |
|---|---|---|---|
| Title | OSKAR SYSTEMS, LLC v. CLUB SPEED, INC. et al. | | |

      c.    Club Speed to take over Oskar's existing customers;
      d.    Club Speed to take over Oskar's sales pipeline of new customers;
      e.    Club Speed to take over Oskar's brand and web traffic;
      f.    Mike Conte to provide ongoing assistance to Club Speed;
      g.    Oskar to push to close a settlement agreement with P2R Karting, Inc., that includes the following terms:
            i.    Club Speed is relieved of its obligation to pay a 10% royalty payment to P2R Karting, Inc.;
            ii.    P2R Karting, Inc. has no rights to improve or resell the Speed Sheet Software;
            iii.    Any future royalty payments due to P2R Karting, Inc. to be split 70/30 between Oskar and Club Speed, respectively; and
            iv.    All claims or potential claims of P2R Karting, Inc. and its affiliates against Eric Novakovich are resolved or released.
      h.    Oskar to provide the Club Speed Defendants with a waiver under California Civil Code section 1542.

2.    Oskar shall receive the following:
      a.    Payment of $475,000 with $50,000 payable as of June 4, 2010, $50,000 payable July 5, 2010, $75,000 payable as of June 4, 2011, and $5,000 payable per month beginning on June 4, 2010. The payment obligation shall be collateralized by Club Speed and Eric Novakovich's stock in Club Speed.
      b.    7.5% equity stake in Club Speed, which equity stake is non-contingent;
      c.    Full cooperation from Eric Novakovich, Club Speed, and Club Speed employees and affiliates in Oskar's case against Pole Position Raceway, Inc., P2R Karting, Inc., Ken Faught and Jason Williams (the "Pole Position Defendants");
      d.    Oskar to receive 9 months of revenue from current Oskar customers (from June 2010 through February 2011);

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-03854 AHM (SHx) | Date | April 5, 2011 |
|---|---|---|---|
| Title | OSKAR SYSTEMS, LLC v. CLUB SPEED, INC. et al. | | |

      e.    Oskar to be paid 5% of the revenue from Club Speed starting in July 2011 for 2 years; and
      f.    The Club Speed Defendants to provide Oskar with a waiver under California Civil Code section 1542.
  3.  General terms:
      a.    Mike Conte will not compete against Club Speed in the karting/venue management software industry.
      b.    Terms of settlement confidential.

Mot., at 10-11. These terms are from the email exchange between Mike Conte of Oskar, and Eric Novakovich of Club Speed. *See* Conte Decl., ¶ 2 & Exh. 1. Oskar contends that the settlement offer was made and accepted in writing and over email during the course of the settlement negotiations on June 4, 2010. Conte Decl., ¶ 2. Oskar contends "[t]he settlement e-mails exchanged between Oskar and the Club Speed Defendants during that June 4, 2010 settlement conference contain all of the rudimentary components necessary to form a valid and enforceable settlement agreement (1) a settlement offer without any conditions or expiration; and (2) an unequivocal acceptance of that settlement offer." Mot., at 8.

      The June 4, 2010 e-mails themselves include text from Eric Novakovich of Club Speed, outlining "my proposal per our oral conversation," and listing the terms above. Conte Decl., Exh. 1; Novakovich Decl;, Exh. 1. Mike Conte replied to the email with the following: "Deal. David can you draft up and send back? Let us know the eta. Mike." Conte Decl., Exh. 1. Alejandro S. Angulo, Oskar's counsel, asserts in his declaration that these emails constituted "an unconditional settlement offer, which Oskar unequivocally accepted in writing through email." Angulo Decl., ¶ 3.

/ / /

/ / /

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-03854 AHM (SHx) | Date | April 5, 2011 |
|---|---|---|---|
| Title | OSKAR SYSTEMS, LLC v. CLUB SPEED, INC. et al. | | |

### B. Club Speed Declarations

#### 1. Novakovich Declaration

In a dueling declaration,[3] Novakovich of Club Speed contends that the June 4, 2010 emails were nothing more than an "agreement to agree." First, Novakovich notes that "At no time during our communications on June 4, 2010 did I or Mr. Conte ever state to the other one that we had resolved all the outstanding issues which existed between us and our companies or that we had settled all the claims set forth in the complaint. I did understand that we had 'agreed to agree' at an unspecified future date." Novakovich Decl., ¶ 6.

In addition, Novakovich asserts that over the course of seven months following the June 4, 2010 settlement conference, the parties "were never able to reduce to writing a settlement of the copyright infringement claims." *Id*. at ¶ 7. "In fact, between June 6, 2010 and October 31, 2010, there were no fewer than nine (9) proposed agreements, including settlement terms, exchanged between Club Speed and Oskar, none of which was ever finalized or signed." *Id*.

Novakovich also lists in his declaration the "numerous terms open and subject to further negotiation and interpretation," Mot., at 14, including: the scope of the asset purchase and acquisition (i.e., the merging of Oskar with Club Speed, the sharing of company data, and the takeover by Club Speed of Oskar's new and existing customers), information on the assets and customer leads, Oskar's provision of a source code to Club Speed, the details of the scope, duration, and locality of the Mike Conte "non-compete agreement." Novakovich Decl., ¶¶ 3-7, 13.

#### 2. Baker Declaration

In addition to Novakovich's declaration, Defendant provided the court with David Baker's declaration ("Baker Decl."). Baker, counsel for Club Speed, notes his understanding that Mr. Novakovich and Mr. Conte had "agreed to agree." Baker Decl. ¶

---

[3] The Club Speed Defendants failed to tab their numerous exhibits, in violation of this Court's general order.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-03854 AHM (SHx) | Date | April 5, 2011 |
|---|---|---|---|
| Title | OSKAR SYSTEMS, LLC v. CLUB SPEED, INC. et al. | | |

4. He states:

> I understood from Mr. Conte and Mr. Angulo that Mr. Conte agreed to allow Mr. Novakovich to complete certain "due diligence" regarding Oskar's assets before finalizing the arrangement in a written document. Further, I understood from them that Oskar agreed to dismiss Club Speed from the copyright infringement action upon completion and execution of satisfactory written documentation of the asset purchase. Essentially, as I understood it, they "agreed to agree" and Mr. Angulo and I briefly discussed the necessity to complete the negotiations and eventually formalize the agreement in the ensuing days.

Baker Decl., ¶ 4. Baker also notes that Mr. Novakovich entered the Common Interest/Joint Defense Agreement "so that Mr. Novakovich could speak directly to Mr. Conte and to his legal counsel without the necessity for my [Mr. Baker's] direct involvement regarding finalizing the asset purchase and, eventually, the settlement." Baker Decl. ¶ 8. He does not claim that Mr. Novakovich entered into the agreement as part of a settlement agreement.

### C. Material Terms

As noted above, a "district court may enforce only *complete* settlement agreements." *Callie*, 829 F.2d at 890 (emphasis in original). In other words, the parties must have evidenced an intent to be bound by the agreement and also show agreement as to the material terms of the agreement. Here, the parties have demonstrated an intent to be bound by an agreement — they both agree that the parties settled at the settlement conference. However, the parties have been unable to demonstrate agreement as to the material terms of the agreement. For example, as evidenced by the months of emails, some as recent as December 21 and 22, 2010 (Baker Decl., Exh. DCB-2), the parties were still communicating about the key terms of the agreement, including the amount of the settlement offer, and the possibility of a global settlement with the Pole Position Defendants. In addition, the Parties have not defined the following material terms of the agreement. These are not the only undefined terms but are an example of some of the material terms left open by the parties.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-03854 AHM (SHx) | Date | April 5, 2011 |
|---|---|---|---|
| Title | OSKAR SYSTEMS, LLC v. CLUB SPEED, INC. et al. | | |

- "Oskar to *push to close* a settlement agreement with P2R Karting, Inc." Conte Decl., Exh. 1; Mot., at 10 (emphasis added). The parties, over email and in the briefing, continue to dispute what this phrase means. *See, e.g.,* Novakovich Decl., ¶ 11. It has not been defined in the agreement.

- "Mike Conte to provide ongoing assistance to Club Speed." Conte Decl., Exh. 1; Mot., at 10. What kind of ongoing assistance? Again, the parties have not defined this term.

- "Mike Conte will not compete against Club Speed in the karting/venue management software industry." Conte Decl., Exh. 1; Mot., at 10. What is the scope of this non-compete clause? The duration?

Without the definitions of these material terms, the Court finds that this agreement was not a complete settlement agreement. Accordingly, the Court DENIES Plaintiff's Motion.

/ / /

/ / /

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-03854 AHM (SHx) | Date | April 5, 2011 |
|---|---|---|---|
| Title | OSKAR SYSTEMS, LLC v. CLUB SPEED, INC. et al. | | |

## IV. CONCLUSION

Because there is conflicting evidence as to whether the parties actually agreed to settle the case on the terms outlined by Oskar, the Court DENIES the Motion to Enforce Settlement.[4]

No hearing is necessary. Fed. R. Civ. P. 78; L. R. 7-15.[5]

|  | : |  |
|---|---|---|
| Initials of Preparer | SMO | |

---

[4] Dkt. 197.

[5] The Ninth Circuit held in *Callie* that "[w]here material facts concerning the *existence* or *terms* of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." *Callie*, 829 F.2d at 890. But district courts have since refrained from holding an evidentiary hearing when factual disputes would not be resolved by oral testimony. *See, e.g., Microsoft Corp. v. Suncrest Enter.*, No. C 03-5424, 2005 WL 3555721, at *3 (N.D. Cal. Dec. 28, 2005) ("Based upon this record, the Court concludes that summary enforcement of the alleged settlement agreement is inappropriate. . . . The Court could hold an evidentiary hearing in order to determine whether the parties entered into a binding settlement agreement. . . . However, based upon the record presently before it, the Court concludes that such a hearing would not resolve the factual disputes created by the conflicting evidence discussed above."); *Kelley v. Euromarket Designs, Inc.*, No. S-07-0232, 2008 WL 109332, at *4 (E.D. Cal. Jan. 8, 2008) (finding declaration raised factual issues as to existence and scope of settlement agreement that cannot be resolved without an evidentiary hearing, and therefore denying motion to enforce). In this case, even if the Court made findings as to credibility the presence of factual disputes as to whether the parties had reached an enforceable meeting of the minds would not be resolved by oral testimony.